UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JENNIFER SMITH,<br><br>  Plaintiff,<br><br>  v.<br><br>SOUTHERN ILLINOIS RIVERBOAT/<br>CASINO CRUISES, INC., d/b/a<br>HARRAH'S METROPOLIS CASINO,<br><br>  Defendant. | Case No. 06-cv-4069-JPG |

**MEMORANDUM AND ORDER**

Jennifer Smith (Smith) filed this lawsuit on May 29, 2006, alleging her employer, Southern Illinois Riverboat/Casino Cruises, Inc., d/b/a Harrah's Metropolis Casino (Harrah's), unlawfully fired her for taking leave pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. At the final pretrial conference, the Court orally denied Harrah's motion for summary judgment (Doc. 42). Now, the Court states its reasons.

**I.   Standard on Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). In determining the existence of a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396.

If the moving party meets its burden, the nonmoving party has the burden "to go beyond

the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *Insolia v. Phillip Morris Inc.*, 216 F.3d 596 (7th Cir. 2000).

**II.     Facts**

Taking the facts in the light most favorable to Smith, and drawing all reasonable inferences in her favor, the evidence establishes the following facts.

Smith, a long-time employee of Harrah's Casino in Metropolis, Illinois, requested and received FMLA leave for a qualifying malady on July 14, 2005. In her roughly twelve years as a blackjack dealer for Harrah's, Smith requested and received at least thirteen FMLA qualifying leaves of absences – Harrah's did not deny any of her requests. (Doc. 25 at 4). Smith reported ready for work on August 12, 2005, and was told to report on August 15, 2005. During a meeting shortly before her shift was about to start on August 15, Diana Jeffords, Employee Relations Manager, and Aubrey Thomas, Vice President of Operations, told her she was fired for "fraudulent medical leave." (Compl. at 3).

As is true in almost all these cases, there is more to the story. In 2005, Harrah's had a point-based attendance policy. Its employees received points for absences for which they did not

receive permission in advance, but not when they took leave with permission or pursuant to the FMLA. If an employee earned twelve points during any twelve-month period, Harrah's could terminate her.

On March 28, 2005, Smith received a "documented coaching" because she had accumulated seven points. She received a written warning on May 3, 2005, because she had accumulated eight points and she got a "Final Written Warning" on July 12, 2005, because she had accrued ten points. (Doc. 25 at 5). On that day, Smith entered into an "Attendance Intervention Agreement with Harrah's which provided" her a last chance to shape up. Smith was ill on July 12 and she asked for and received paid leave so she could see her doctor the next day. This exhausted all her available leave.

After her visit, Smith's doctor submitted the following medical certification to Harrah's: "Jennifer was seen in office on 7/14/05 with complaints of epigastric pain, chest pain, anxiety type symptoms. Advised to rest, off work until released. Seen for f/up on 7/21/05 with abdominal pain. Advised to rest and remain off work until released. Next visit 7/26/05." (Doc. 25 at 6). Though her doctor advised her to rest and avoid stressful situations, he did not prescribe any specific limitations on her activity. (Doc. 29 at 3).

Jenna Thompson, an employee relations assistant in Harrah's Human Resources Department, informed Harrah's table managers by email on July 14, 2005 about Smith's taking of FMLA leave. Kelley Keeling, a Casino Manager, sent the following reply:

> Just a little FYI. Jennifer had requested PTO for that time frame. However, we had to tell her that her PTO could not be granted because she had used all of her PTO hours. I am sure that we can't do anything about this but just wanted to point out the fact that its obvious she is finding a way to work the system.

(Doc. 25 at 7). This and other information caused Jeffords to become suspicious of Smith's July

leave, which led her to hire an investigator to surveil Smith. The investigator reported Smith's activities and videotaped her while she was on leave.

According to Jeffords, she spoke with Smith – and took notes of the conversation – on the telephone sometime while she was on leave. At her deposition, Jeffords testified that Smith told her she could not stand or bend, that she was "confined pretty much to her home," that she "didn't hardly get out at all," that she was "basically [on] bed rest," that she "just went to the doctor's," and that she "was sick and throwing up blood all the time." (Doc. 25 at 9). Jeffords did not date her notes, so she was not sure when she spoke to Smith. In her deposition, Smith testified that she did not say these things to Jeffords. (Doc. 29 at 7). Smith's doctor also testified that he did not restrict Smith to bed rest or tell her to remain in her home. (*Id.*)

In any event, in Jeffords's mind, Smith's description of her limitations did not jibe with the reports and videotapes from the investigator. Because of the discrepancy, Jeffords concluded that Smith had lied to her and was capable of performing her job. She shared her conclusions with Thompson and Thomas, and told Thompson to schedule the meeting on August 15, 2005.

Thomas and Jeffords met with Smith on August 15. According to Thomas, Smith told he and Jeffords that her doctor had ordered bed rest and told her she could not bend, lift, stand or travel. (Doc. 25 at 10). Smith denied this account, but admitted she told them she took a five-day vacation in Florida at the end of July 2005. At the end of the meeting, Jeffords and Thomas concluded that Smith had lied about her medical status. Because these lies were violations warranting termination under Harrah's policies, Thomas and Jeffords fired her on the spot. (Doc. 25 at 11).

### III.   Analysis

The FMLA provides leave for qualified employees who must be absent from work for

family or medical reasons. 29 U.S.C. § 2601 *et seq.*; *Price v. City of Fort Wayne*, 117 F.3d 1022, 1024 (7th Cir.1997). It also prohibits employers from discharging or otherwise discriminating against anyone for opposing practices that are unlawful under the FMLA, 29 U.S.C. § 2615(a)(2), and from discriminating against employees for instituting or participating in FMLA proceedings or inquiries, 29 U.S.C. § 2615(b). Courts construe these provisions as prohibiting an employer's retaliation against an employee for exercising her FMLA rights. *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir.2005); *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir.2004).

The issue in this case is whether Harrah's fired Smith because she took FMLA leave or for a legitimate, nondiscriminatory reason. *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999). To show that Harrah's discriminated against her, Smith can proceed under the direct method or the indirect method – the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 . *See Buie*, 366 F.3d at 503. To succeed under the direct method, Smith must show that she engaged in protected activity and that she suffered an adverse employment action because she did so. There is no question that she engaged in protected activity and no question that she suffered an adverse employment action, so the only issue is causation. To establish this causal link, Smith can offer direct evidence – essentially an admission by Harrah's that its actions were motivated by prohibited animus – or circumstantial evidence from which a jury could infer intentional discrimination. *Buie*, 366 F.3d at 503; *see also Sylvester v. SOS Children's Villages of Ill.*, 453 F.3d 900, 902 (7th Cir. 2006); *Treadwell v. Office of Ill. Sec'y of State*, 455 F.3d 778, 781 (7th Cir. 2006).

It appears that Smith seeks to proceed under the indirect method. If this is the case, her focus on the "causal link" between her protected conduct and her termination is misplaced. The

5

Seventh Circuit did away with the causal link requirement for purposes of the indirect method in 2002. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 643 (7th Cir. 2002). As explained by the Court in *Stone*, "*McDonnell Douglas* is designed to give the plaintiff a boost when he has no actual evidence of discrimination (or retaliation) but just some suspicious circumstances. If he can prove that his protected expression caused him to be fired, he doesn't need *McDonnell Douglas* and it gives him nothing." *Id*. Giving Smith the benefit of the doubt, the Court will address her claims under the direct method.

Relying on *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994), *Rabinovitz v. Pena*, 89 F.3d 482, 489 (7th Cir. 1996), and *McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 797 (7th Cir. 1997), Smith contends that the temporal proximity between her taking of FMLA leave and her termination is sufficient to meet the causation requirement for purposes of summary judgment. In *Dey*, the Court remarked, "Generally, a plaintiff may establish [a causal] link through evidence that the discharge took place on the heels of protected activity." 28 F.3d at 1458. The Court found causation largely on temporal succession, but noted that the defendant's proffered reason for the termination was poor performance, despite the fact that the plaintiff had no record of poor performance evaluations and had received a large raise shortly before she was fired. *Id*. *McClendon* relied on *Dey*, but went further, suggesting that a two- to three-day period between the protected activity and the adverse action is sufficient to establish causation as a matter of law. 108 F.3d at 797.

Notably, Smith's cases are old. More recently, the Seventh Circuit has said, "mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue." *Stone*, 281 F.3d at 643; *see e.g., Bilow v. Much Shelist Freed Denenberg Ament &*

*Rubenstein, P.C.*, 277 F.3d 882, 895 (7th Cir. 2001) (finding a plaintiff "needs more than a coincidence of timing to create a reasonable inference of retaliation"); *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 630 (7th Cir. 2001) ("The timing of the action, without more, is insufficient to establish the protected activity as a motivating factor."); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) ("Speculation based on suspicious timing alone, however, does not support a reasonable inference of retaliation; instead, plaintiffs must produce facts which somehow tie the adverse decision to the plaintiffs' protected actions."); *Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176, 1179 (7th Cir. 1998) ("Timing may be an important clue to causation, . . . but does not eliminate the need to show causation."). Today, "temporal sequence analysis is not a magical formula which results in a finding of a discriminatory cause." *Buie*, 366 F.3d at 506 (quoting *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1034 (7th Cir.1999)). Rather, "other circumstances must also be present which reasonably suggest that the two events are somehow related to one another." *Sauzek*, 202 F.3d at 918.

In addition to suspicious timing, Smith suggests that Harrah's reason for terminating her supports an inference of causation. In her view, because her doctor did not specifically restrict certain activities – e.g., bending and standing – Jeffords's account of her conversation with Smith is unreliable. This supports her theory of causation then, because it suggests that Harrah's "concocted the story" to cover its tracks. (Doc. 29 at 13).

While the point is very close, Smith has presented sufficient evidence that, when combined with the temporal proximity between the protected activity and the adverse action, supports an inference that Harrah's terminated her employment for an illegal reason. The Court must accept that Smith never made a phone call to Jeffords and did not speak of specific limitations during the meeting on August 15. In this light, the notion that Harrah's fired her for

"fraudulent medical leave" is not supported by the record.  This is especially so given that Harrah's provides no details whatsoever regarding the activities its investigator observed Smith undertaking.  That she went on vacation does not, in itself, suggest that her limitations were such that she could work.  When viewed as a whole, the suspicious circumstances surrounding Smith's termination support an inference that her taking of FMLA leave was a "substantial factor" or a "motivating factor" in her discharge. *Pugh*,  259 F.3d at 630.

## CONCLUSION

For the foregoing reasons, the Court **DENIED** Harrah's motion for summary judgment (Doc. 24).

**IT IS SO ORDERED.**

**DATED: June 21, 2007**

                                               s/ J. Phil Gilbert
                                               **J. PHIL GILBERT**
                                               **DISTRICT JUDGE**